**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>EDWIN CARR, AKA Edwin Luther Carr, Jr.,<br>*Defendant-Appellant.* | No. 12-50082<br><br>D.C. No.<br>2:09-cr-00618-SVW-2 |

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>MARK ANTHONY FRANKLIN,<br>*Defendant-Appellant.* | No. 12-50089<br><br>D.C. No.<br>2:09-cr-00618-SVW-3 |

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>DAMIEN LAMAR ANDERSON,<br>*Defendant-Appellant.* | No. 12-50135<br><br>D.C. No.<br>2:09-cr-00618-SVW-1 |

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant*,

                    v.

MARK ANTHONY FRANKLIN,
          *Defendant-Appellee.*

No. 12-50144

D.C. No.
2:09-cr-00618-
SVW-3

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant*,

                    v.

DAMIEN LAMAR ANDERSON,
          *Defendant-Appellee.*

No. 12-50169

D.C. No.
2:09-cr-00618-
SVW-1

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
December 2, 2013—Pasadena, California

Filed August 4, 2014

Before:  Harry Pregerson, Marsha S. Berzon,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

# SUMMARY[*]

## Criminal Law

The panel affirmed in part, reversed in part, and remanded, in appeals and government cross-appeals arising from a case in which a jury convicted Edwin Carr, Damien Anderson, and Mark Franklin on counts related to the armed robbery of a federal credit union.

The panel held that the district court did not err by admitting an eyewitness's pretrial identification testimony. The panel held that the pretrial identification procedure was not impermissibly suggestive, and that despite an eighteen-month delay between the robbery and the eyewitness's interrogation, the district court did not err by allowing the jury to weigh her identification testimony.

The panel held that the evidence supports the jury verdict that Carr was guilty of forced accompaniment under 18 U.S.C. § 2113(e). The panel held that the evidence supported the jury's finding that forced accompaniment was foreseeable to all three defendants, and that to the extent the district court vacated Anderson's and Franklin's convictions under § 2113(e), it erred.

The panel held that the district court did not err by ruling that the evidence did not support Franklin's convictions for use of firearms under 18 U.S.C. §§ 2113(d) and 924(c). Noting that the written judgment is inconsistent with the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

district court's oral explanation of its decision to vacate Franklin's conviction under § 2113(d), the panel instructed the district court on remand to enter an amended judgment reflecting that Franklin was acquitted of the § 924(c) gun charge and the § 2113(d) gun enhancement.

The panel held that the district court's *Alleyne* error – application of the ten-year mandatory minimum pursuant to 18 U.S.C. § 924(c)(1)(A)(iii) without a supporting jury finding – was harmless because all of the trial evidence supported the court's implicit finding that guns were discharged during the course of the robbery.

The panel held that the district court sufficiently justified its departure from the recommended guidelines range when sentencing Franklin, and rejected Franklin's argument that his sentence is substantively unreasonable.

---

## COUNSEL

Rasha Gerges (argued) and Christopher K. Pelham, Assistant United States Attorneys; Robert E. Dugdale, Chief, Criminal Division; Andre Birotte Jr., United States Attorney, Central District of California, Los Angeles, California, for Plaintiff-Appellee / Cross-Appellant.

Rebecca P. Jones (argued), San Diego, California, for Defendant-Appellant / Cross-Appellee Franklin.

Michael J. Treman (argued), Santa Barbara, California, for Defendant-Appellant / Cross-Appellee Carr.

Mark Yanis (argued), Costa Mesa, California, for Defendant-Appellant / Cross-Appellee Anderson.

**OPINION**

CHRISTEN, Circuit Judge:

## I.  Introduction

Edwin Carr, Damien Anderson, and Mark Franklin were each indicted on three counts related to the armed robbery of a federal credit union.  A jury found all of the defendants guilty on all counts.  They appeal their convictions and sentences.  The government cross-appeals, arguing the district court erroneously vacated portions of the defendants' sentences.  We have jurisdiction under 18 U.S.C. §§ 1291 and 3731.  We affirm in part, reverse in part, and remand.

## II.  Facts and Proceedings

Vons Federal Credit Union in Santa Fe Springs, California, was robbed in February 2008.  Edwin Carr, Damien Anderson, and Mark Franklin were each indicted for: (1) conspiracy to commit bank robbery in violation of 18 U.S.C. § 371; (2) bank robbery, along with enhancements for the use of a firearm and forced accompaniment in violation of 18 U.S.C. §§ 2113(a), (d), and (e) respectively; and (3) use or possession of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c).

At trial, the jury heard testimony from four eyewitnesses to the crime: Lanita Fields, who was present at the crime scene; Barbara Wilson, one of two tellers inside the credit

union; Nicole Cervantes, the other teller; and Robert Monken, a security guard. The jury also heard testimony from police officers and forensic scientists who investigated the scene and collected physical evidence.

Fields testified that on the morning of the robbery, she received a telephone call from an old boyfriend, Darius Wilson, who asked her to meet him. Darius directed Fields to a duplex where he asked Fields to participate in a bank robbery. Fields agreed, and Darius took Fields inside the duplex to meet some people. Fields testified that she was introduced to eight or ten men she had not seen before. At trial, Fields identified Carr, Anderson, and Franklin as having been in the room. Fields testified that she spent about eight to ten minutes inside the duplex, that she stood about five feet away from the defendants, and that she could see them clearly.

Fields left the duplex with several of the men. She explained that two of them got into her car while Franklin drove a red car with another man in it. The cars traveled in a convoy toward the credit union. Fields used marijuana on the way.

After driving about 30 minutes, the cars stopped a few blocks from the credit union and a passenger got out of Franklin's red car and into Fields's car. The men in Fields's car told her to drive to the credit union parking lot, which she did.

At the time of the robbery, Vons Federal Credit Union was located in a small trailer in the parking lot of Vons Distribution Center. Stairs and a ramp led to a deck outside the trailer, where customers walked up to be served through

three teller windows without entering the trailer. The trailer had one door, which was locked at all times except to allow credit union employees to enter and exit, and to accept deliveries. Customers were never allowed to enter the trailer. Testimony at trial established that Franklin was a former member of Vons Federal Credit Union and a former employee of Vons Distribution Center.

One of the men in Fields's car was dressed as a FedEx employee. Fields identified this man as Damien Anderson, and she testified that Anderson got out of her car and approached the door of the credit union carrying a clipboard and a box.

Barbara Wilson, one of two credit union tellers working that morning, identified Edwin Carr as the man in the FedEx uniform. Wilson testified that when she saw the man wearing a delivery uniform approach the credit union, she opened the door to accept the package. Before Wilson could sign for the package, the man used the box to shove her back inside the trailer. Realizing that this was a robbery, Wilson attempted to push the robber out of the trailer doorway. She managed to advance a few feet outside before being pushed back inside. In the struggle, Wilson resisted the robber by grabbing one of the small wooden tables mounted under the teller windows outside the trailer. Eventually, the man overpowered Wilson and pushed her to the floor of the trailer.

Nicole Cervantes was the other teller working that morning. She testified that she heard Wilson say "Oh, FedEx" and get up to open the door to the credit union. After a minute or two, Cervantes left her station to see if Wilson needed help. Standing three or four feet away, she saw a man in a black sweatshirt in the middle of the trailer. The man

said, "This is a robbery" and forced Cervantes at gunpoint to put cash into a black trash bag. Cervantes testified that her interaction with the robber wearing a black sweatshirt lasted about a minute. She also testified that the light was good and that she stood a few feet to a few inches away from the robber. Cervantes identified Damien Anderson as the second robber.

The men ran out of the trailer with the garbage bag and the money. Wilson recalled that the second robber pointed a gun at her face as he passed, but she did not get a look at his face. Wilson also testified that as he ran down the ramp outside the credit union, the robber with the gun pointed it over the fence at someone she could not see. Wilson estimated that three minutes passed between the time the first robber approached the credit union door and the time the robbers fled.

Waiting outside in her car, Lanita Fields watched the altercation in the credit union doorway. She told the jury that a second robber left her car and entered the credit union after the man in the FedEx uniform got out of her car. Fields identified Edwin Carr as the second robber. She also testified that a third, unidentified robber pulled out a gun, left her car, and entered the credit union. According to Fields, Franklin never got out of the red car.

As the robbery was in progress, Robert Monken, a security guard at Vons Distribution Center, saw Barbara Wilson fighting and shoving with a man on the platform outside the credit union. Monken estimated that about ten seconds later, three men ran out of the credit union and got into Fields's car. According to Monken, the last man out

pointed his gun directly at Monken as he walked down the ramp.

Fields said the three men ran out of the credit union, jumped in her car, and ordered her to drive. She saw Monken pursuing them in his security van and testified that two of the three men in her car started shooting at the security van as it chased them.

Eventually, the men ordered Fields to stop in a residential neighborhood where they got out of her car and ran into a backyard. Monken was still following Fields, but she managed to evade him.

Driving separately in a "maroon" Buick, Franklin was stopped near the credit union shortly after the robbery was reported. He told the arresting officer that he had been at Vons Distribution Center looking for a job, but later stated that he was in the area to have lunch with a friend. A search of Franklin's maroon Buick revealed a baseball cap and a cell phone on which calls to and from Anderson had been made and received on the morning of the robbery. DNA testing on the baseball cap revealed DNA consistent with Anderson.

The government recovered several other pieces of corroborating physical evidence. A black sweatshirt with DNA on it consistent with Carr was found in a backyard near where the robbers fled on foot after leaving Fields's car. The sweatshirt was found next to coins and money traced to the robbery.

In addition to this testimony concerning the events that occurred on the day of the robbery, the jury heard evidence that Fields was interviewed by Agent Taglioretti of the FBI

eighteen months after the robbery. The interrogation was recorded. Fields was told that surveillance cameras showed her car at the scene of the robbery and that witnesses identified her as one of the drivers. Confronted with evidence of her involvement in the crime and told that she faced "very serious" exposure to charges, Fields identified Carr, Franklin, and Anderson as participants in the robbery. She selected their photographs from a series of photos Taglioretti displayed during the interrogation. At trial, Fields testified about her pretrial identification of the defendants over their objection.

After the jury found all three defendants guilty of all charges, the defendants filed motions for a new trial and judgment of acquittal. The district court granted Franklin's Rule 29 motion for judgment of acquittal as to his firearms convictions under § 2113(d) and § 924(c). The court's sentencing comments made it apparent that the court considered Carr to be the robber who wore the FedEx uniform, and Franklin, the robber who waited in the red or maroon Buick, to be the "architect" of the robbery because he had a history of working at Vons. The court expressed concern that Franklin and Anderson could not have foreseen that the FedEx robber would get into a shoving match with Barbara Wilson at the door of the credit union, this tussle being the basis for the forced accompaniment charge. But the record is unclear regarding the court's ruling on Anderson's and Franklin's motions for acquittal of forced accompaniment.

On appeal, defendants argue that the district court erred by allowing Fields to testify about her pretrial identification of them. They also argue that the evidence was insufficient to support several of the charges. Franklin appeals his

sentence, and Anderson and Carr argue that the court's finding that they discharged firearms during the robbery was reversible error under *Alleyne v. United States*, 133 S. Ct. 2151 (2013). The government cross-appeals, arguing that the district court erred by vacating Franklin's and Anderson's sentencing enhancements for forced accompaniment under § 2113(e), and by vacating Franklin's convictions for use and possession of a firearm under § 2113(d) and § 924(c).

## III.    Discussion

### A.  The district court did not err by admitting Fields's pretrial identification testimony.

Before trial, the defendants joined in a motion to exclude Fields's pretrial identification of the defendants. The district court denied the motion. All three defendants submit that this was error, arguing that the pretrial identification procedure was impermissibly suggestive and unreliable.

The constitutionality of pretrial identification procedures is a question of law we review de novo. *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir. 1998). "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside . . . only if the [pretrial] photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). This involves a three-part inquiry. First, this court must determine if the pretrial identification procedure was impermissibly suggestive. *United States v. Love*, 746 F.2d 477, 478 (9th Cir. 1984). Second, if the identification procedure was unduly suggestive, the court must determine whether it was

sufficiently reliable such that it does not implicate the defendant's due process rights. *Id.* Third, even if the pretrial identification procedure was suggestive and the identification was unreliable, this court must examine the district court's failure to exclude the identification for harmless error. *See Ocampo v. Vail*, 649 F.3d 1098, 1114 (9th Cir. 2011).

### 1. The pretrial identification procedure was not impermissibly suggestive.

"An identification procedure is suggestive when it emphasizes the focus upon a single individual thereby increasing the likelihood of misidentification." *Montgomery*, 150 F.3d at 992 (internal quotation marks, alteration, and citation omitted). To determine if an identification procedure was unduly suggestive, the court must examine the totality of the surrounding circumstances. *United States v. Bagley*, 772 F.2d 482, 492 (9th Cir. 1985).

Both Fields and Agent Taglioretti described the contested identification procedure at trial. Because only an audio recording was made, Taglioretti and Fields were both extensively questioned about the method Taglioretti used to display the suspects' photos during the questioning.

Agent Taglioretti explained that when the interview began, he advised Fields that the situation was "very serious." The audio recording confirms that he repeated this at least three times. According to Agent Taglioretti, Fields was very upset and cried throughout most of the interview.

After asking Fields some preliminary questions but before giving Fields a *Miranda* warning, Agent Taglioretti described what he knew about the robbery and the evidence that Fields

was involved.  Taglioretti explained that while he was doing this, he placed a series of twelve photographs, one after another, face up, in a stack on the table.  Agent Taglioretti recalled that the photographs of the defendants were the last three photos he laid on the table, so they ended up as the first three photos at the top of the stack.  He described the other photographs in the pile as photos of men with similar appearances.  After he displayed the photos in the manner described, Agent Taglioretti read Fields her *Miranda* rights and began to ask questions about the robbery.  Taglioretti did not admonish Fields that the stack of photographs may not include pictures of the suspects.

Agent Taglioretti testified that Fields spontaneously identified the three defendants by separating their photographs from the pile before he asked her about them. She did this after she had been told that she was implicated in the robbery.  Fields's testimony substantially corroborated Agent Taglioretti's version of how the interrogation was conducted.

Taglioretti informed Fields that it could take a year or two before the case went to trial.  This portion of the audio recording captured Fields's statement: "Well, unless I pin it on these guys."  During the interrogation, Taglioretti did not ask what Fields meant by this statement, but at trial Fields testified that she meant "that these were the [people] involved, like are they going to get it."

The defendants joined in a motion to exclude evidence of Fields's pretrial identification, arguing that Agent Taglioretti used an impermissibly suggestive procedure that differed substantially from the version of events the government described in its pretrial briefing.  The district court denied the

motion, reasoning that the conflicting versions of the interview went to the weight of the evidence, not its admissibility. The district court later held an evidentiary hearing on the issue outside the presence of the jury and reached the same conclusion. The court found that while the transcript of the interrogation was ambiguous and "it is clear that there were things going on physically and visually that weren't captured on the audio," Fields and Agent Taglioretti were "essentially consistent" in their descriptions of what happened during the interrogation. The court concluded it had no reason to discredit Agent Taglioretti's version of events and denied the motion, reasoning that the procedure described by the government was not impermissibly suggestive.

On appeal, Carr, Anderson, and Franklin renew their argument that the pretrial identification procedure was impermissibly suggestive because Agent Taglioretti presented Fields with only three photographs. This argument seems to be based on the defendants' supposition that because only three photographs were mentioned in the audio recording, only three photographs were displayed. But Taglioretti testified that there were twelve photographs in the stack used in the interrogation, and Fields testified that there were "about ten" photographs in the stack. We agree with the district court that the record of the interrogation is ambiguous because there is no video, but we also agree with its conclusion that the defense presented no reason to discredit Agent Taglioretti's account and we cannot conclude that Agent Taglioretti unfairly focused Fields on the defendants by displaying 10–12 photographs of men of similar appearances during the interrogation.

The appellants also argue that Fields's identification was coerced by Agent Taglioretti's repeated statements that cooperation would help her avoid serious prison time. There can be no question that Fields undoubtedly felt pressure to cooperate — she was told the police had strong evidence that she had participated as the getaway driver in the robbery, and she knew that shots had been fired from her car. But some degree of pressure to cooperate is exerted whenever the police question a suspected criminal accomplice, and we know of no authority holding that this alone renders an out-of-court identification inadmissible. In these circumstances, it is hard to imagine a procedure that would not put Fields under pressure. Apart from the fact that she was personally implicated, defendants cite no other reason to suspect Fields's identification of defendants was coerced. They do not, for example, claim that she was deprived of food, friends, and counsel, *cf. Reck v. Pate*, 367 U.S. 433, 441–42 (1961), or deprived of sleep, *cf. Ashcraft v. State of Tennessee*, 322 U.S. 143, 153 (1944), or subjected to extended interrogation, *cf. Chambers v. State of Florida*, 309 U.S. 227, 238–39 (1940), or that she was mentally disabled and subjected to misleading questioning, *cf. United States v. Preston*, 751 F.3d 1008, 1017–18 (9th Cir. 2014) (en banc), or that she was a juvenile or without the benefit of proper *Miranda* warnings, *cf. Doody v. Ryan*, 649 F.3d 986, 1009 (9th Cir. 2011) (en banc). The jury was certainly aware of her incentive to cooperate in the hope of receiving a lesser charge or a lighter sentence for herself, but this incentive goes to the weight, not the admissibility, of Fields's testimony. *See Manson v. Brathwaite*, 432 U.S. 98, 113 n.14 (1977).

Defendants also challenge Fields's identification on the basis of the following exchange captured on the audio recording of the pretrial interrogation:

Fields:                How long will this take?

Agent Taglioretti:     It'll take awhile, it could
                       take like two years

Fields:                Oh no!

Agent Taglioretti:     Yeah, it could take one
                       year. You know it could
                       be over in one year. But
                       right now

Fields:                (Crying) unless I pin it on
                       these guys

Agent Taglioretti:     I'm sorry?

Fields:                Unless I pin it on, will I
                       have to (inaudible) with
                       them

Agent Taglioretti:     Well, I have to talk to the
                       prosecutor. It's possible
                       he could fashion it so that
                       you're not going to court
                       with them . . . .

Counsel for all three defendants confronted Fields with this
exchange, and Carr's counsel argued in summation that
Fields's testimony should not be believed in light of these
statements. On appeal, defendants argue this exchange is
evidence that Fields felt compelled to identify someone,
regardless of whether the photos represented the real robbers.
There is no question the jury could have interpreted this

exchange as showing that Fields had an incentive to cooperate with the police, and that she likely understood she would be positioned to negotiate for a more favorable resolution of her own criminal liability if she identified her accomplices. But Agent Taglioretti expressly told Fields that he did not make charging decisions and could not promise Fields leniency if she cooperated. We conclude that Agent Taglioretti did not impermissibly coerce Fields's testimony such that it lacks sufficient reliability as a matter of law. The entire exchange surely showed the jury that Fields felt pressure, but the jury was free to disregard or discount Fields's identification testimony.

Finally, the appellants argue that the procedure Agent Taglioretti used was tainted by his failure to admonish Fields that the photos he showed her may not have included pictures of the suspected robbers. Appellants cite no case holding that the lack of this type of admonition renders an otherwise permissible identification procedure unduly suggestive. This omission did undermine the reliability of the identification procedure and the jury was appropriately told of this omission, but we cannot say that it rendered Fields's identification inadmissible. We conclude the district court did not deny defendants due process by ruling that Agent Taglioretti's interrogation technique was not impermissibly suggestive; the technique he used did not present a substantial likelihood of irreparable misidentification.

### 2. The district court did not err by allowing the jury to weigh Fields's identification testimony.

On appeal, the defendants challenge Fields's identification testimony because there was an eighteen-month delay between the robbery and the interrogation. The

defendants argue that the delay made it impossible for Fields to reliably identify the individuals who were involved in the robbery. We agree that the eighteen-month delay gave the jury a powerful reason to discount Fields's testimony. But because we conclude that the procedure used to interrogate Fields was not impermissibly suggestive, we find no error in the trial court's decision to allow the jury to weigh this testimony. *See, e.g.*, *Montgomery*, 150 F.3d at 993 (analyzing the reliability of an identification only after concluding the pretrial procedure used to elicit the identification was impermissibly suggestive).

When an identification procedure is not unduly suggestive, nor barred by Evidence Rule 403,[1] it is the duty of the jury to assess the reliability of the evidence. *See Watkins v. Sowders*, 449 U.S. 341, 347–48 (1981) ("[T]he proper evaluation of evidence under the instructions of the trial judge is the very task our system must assume juries can perform. Indeed . . . the *only* duty of a jury in cases in which identification evidence has been admitted will often be to assess the reliability of that evidence."). The jury is equipped to make these determinations because "[c]ounsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification — including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi." *Id.* (quoting *Brathwaite*, 432 U.S. at 113 n.14).

---

[1] The defendants did not argue at trial or in their briefing on appeal that the probative value of Fields's pretrial identification is outweighed by a danger of unfair prejudice or misleading the jury under Evidence Rule 403.

In this case, Fields's testimony was seriously tested at trial. The defense seized the opportunity to extensively cross-examine both Agent Taglioretti and Fields, and the eighteen-month delay between the robbery and Fields's identification was emphasized in the defendants' closing arguments. Fields was also confronted with other weaknesses in her testimony, including her criminal history, her use of marijuana on the way to the robbery, her motivation to cooperate with the prosecution in return for a reduced sentence, and the discrepancies between Fields's testimony and the tellers' testimony about which robber wore the FedEx uniform and how many robbers entered the credit union. These weaknesses were similarly emphasized in the defendants' closing arguments. Agent Taglioretti was cross-examined about the identification procedure he used, his failure to admonish Fields that the suspects' photos might not have been included in the stack of photos, and the inconsistency between Fields's testimony and the tellers' identification. The jury was also aware that there were reasons to decide that Fields's testimony was reliable: unlike the tellers, she spent eight to ten minutes in the duplex with the defendants where she was only five feet away from them and she could see them clearly. She also spent about 30 minutes in the car with two of them en route to the credit union. We conclude the jury was well-positioned to weigh the strengths and weaknesses of Fields's identification, and decide whether it found the testimony persuasive. The district court did not err by admitting this evidence.

## B. The evidence supports the jury's verdict that Carr was guilty of forced accompaniment.

In its closing argument, the prosecution stressed its view that the evidence showed Carr was guilty of forced

accompaniment because he shoved Barbara Wilson and forced her back into the credit union trailer after she managed to push her way outside.**[2]**   The prosecution argued that the other defendants were guilty of forced accompaniment as co-conspirators in the robbery.  *See United States v. Douglass*, 780 F.2d 1472, 1475–76 (9th Cir. 1986) (conspirators are liable for the foreseeable criminal acts of co-conspirators committed in furtherance of conspiracy).  After the jury found all three defendants guilty of forced accompaniment, defendants moved for acquittal, arguing that the government's evidence was insufficient to support this charge.   As noted, the district court denied the motion. Defendants argue on appeal that the evidence did not suffice to prove that the shoving match rose to the level of forced accompaniment, and that even if it did, forced accompaniment was unforeseeable to co-conspirators Franklin and Anderson.

When considering a challenge to a verdict based on the sufficiency of the evidence, we "consider the evidence presented at trial in the light most favorable to the prosecution" and determine whether "this evidence, so viewed, is adequate to allow *any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt."  *United States v. Nevil*s, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc) (internal quotation marks and citations omitted).

---

**[2]** 18 U.S.C. § 2113(e) provides a sentencing enhancement for aggravated conduct committed during a bank robbery, including when a robber "forces any person to accompany him without the consent of such person."

Carr argues that Wilson's testimony that the robber in the FedEx uniform engaged her in a shoving match was insufficient to support a sentencing enhancement under 18 U.S.C. § 2113(e), because the movement of Wilson's body in and out of the credit union doorway was too minimal to qualify as forced accompaniment. Because all three defendants were convicted of this charge on the theory that they were equally culpable as co-conspirators, all defendants join in this argument.[3]

"On its face, the enhancing elements [of § 2113(e)] are that a defendant (1) in the course of committing a bank robbery (2) forces a person (3) to accompany him (4) without that person's consent." *United States v. Strobehn*, 421 F.3d 1017, 1019 (9th Cir. 2005). Our court concluded in *Strobehn* that this forced accompaniment enhancement was applicable where a defendant accosted a security guard in a bank parking

---

[3] As we have observed, there was conflicting testimony about whether Carr was the robber dressed in a FedEx uniform. Wilson testified that it was Carr who wore the FedEx uniform, but it is not entirely clear how well Wilson saw the FedEx robber's face. She testified that she is 5'3" tall, that the robber was considerably taller, and that she used her head as a battering ram, planting her feet and pushing her head into the robber's chest in an effort to force him back outside. The second teller, Cervantes, only recalled a robber who wore black, pointed a gun at her, and instructed her to put cash in a garbage bag. Fields, the getaway driver, spent several minutes with the robbers inside the duplex and about thirty minutes driving them to the credit union. She testified that it was Anderson who wore the FedEx uniform. The uniform was not among the physical evidence retrieved by the police, but they did retrieve a black sweatshirt with DNA on it consistent with Edwin Carr. The jury was not asked to make a finding regarding which defendant wore the uniform, but the district court seems to have credited Wilson's testimony that it was Carr, and the court's sentencing remarks indicate that the court considered Anderson and Franklin potentially guilty of forced accompaniment only under the government's accomplice liability theory.

lot, and forced the guard at gunpoint to walk to the bank door, open it, and lie on the floor. *Id.* at 1018. We declined to read a "substantiality" requirement into the degree of movement required by the statute, holding that the enhancement was applicable even where the victim "was moved for only a few seconds, over a matter of feet, and without increasing the danger already inherent in an armed bank robbery." *Id.* at 1019. *Strobehn* left open the possibility that some movement might be too slight to qualify as forced accompaniment: "we do not hold that § 2113(e) 'plainly' applies to *any* forced accompaniment, no matter how slight." *Id.* at 1020 n.1.

Here, Wilson testified that she was standing in the credit union when she opened the door to receive the robber dressed as a FedEx employee. She was pushed deeper into the credit union, but she responded by shoving the robber's chest with her head. She was able to push the robber, and get herself, a few feet outside the credit union. Wilson was screaming and testified that she was trying to get outside to summon help and to escape danger. Once outside, she grabbed a small table mounted below the windows of the credit union and hung on while the robber tried to force her back inside. Wilson was overpowered after a few seconds; she was thrown inside the credit union and knocked to the floor where she remained until the robbers fled.

Although Wilson was only moved a few feet, it is undisputed that she was forced into the credit union where a bank robbery was in progress, clearly against her will. She was prevented from summoning help, and she was not allowed to flee from an obviously dangerous situation. We do not find these facts to be appreciably different from those in *Strobehn*, where the victim was forced to walk inside a building to facilitate the commission of an armed robbery.

As the Seventh Circuit has held, "[c]learly, the phrase 'forces any persons to accompany him without . . . consent' encompasses forcing someone outside a building to enter the building." *United States v. Davis*, 48 F.3d 277, 279 (7th Cir. 1995). We conclude that the evidence supported Carr's conviction for forced accompaniment.

### C. The evidence supported the jury's finding that forced accompaniment was foreseeable as to all three defendants.

None of the government's evidence showed that Franklin exited the red car. He and Anderson argue that even if the shoving match in the doorway constituted forced accompaniment, their convictions under 18 U.S.C. § 2113(e) should be vacated because it was unforeseeable to them that the FedEx robber would use force to gain access to the credit union. They argue that the evidence showed a plan for the FedEx robber to trick the tellers into opening the door, not to enter by force or the show of force. Their contention on appeal is that it was not foreseeable that two women, working in a credit union without a security guard, would resist an armed robbery. But Barbara Wilson apparently had a different idea about the extent to which she was willing to acquiesce in the armed robbery of the credit union where she was employed. Once she realized the credit union was being robbed, Wilson used all her strength to escape and flee. Having reviewed the record, we conclude that reasonable jurors could find that the struggle in the doorway was foreseeable to all the accomplices.

As a preliminary matter, it is unclear from the record whether the district court granted Anderson's and Franklin's post-verdict motions for acquittal of their forced

accompaniment convictions under § 2113(e).**[4]**    The
government argues in its cross-appeal that the district court
did not apply the sentencing enhancement under § 2113(e) to
Franklin or Anderson, and that it erred by failing to do so.
We conclude the evidence supports the jury's finding that
forced accompaniment was foreseeable to all three
conspirators.

The evidence must be considered in the light most
favorable to the prosecution. *Jackson v. Virginia*, 443 U.S.
307, 319 (1979).  Wilson testified that the robber in the
FedEx uniform began to push her into the credit union almost
immediately, before she had realized he was a fraud.  This
suggests that the robber's actions were part of a plan to trick
the teller into unlocking the door so he could force his way in
once the door was open.  Though others may have reacted
differently, reasonable jurors could also conclude that an
employee like Wilson, who thought she was accepting a
delivery but instead found herself being forcefully shoved,
would shove back.  Wilson's battering ram technique may
have been unique, but it was at least momentarily effective,
and reasonable jurors could decide that it was foreseeable an
employee would attempt to flee rather than remain in harm's

---

**[4]** In its order of judgment, the district court found Anderson guilty of
"armed bank robbery and forced accompaniment in violation of 18 U.S.C.
§ 2113(a), (d), (e) as charged in Count 2."  Franklin was similarly found
guilty of violating § 2113(e).  But at the sentencing hearing, the district
court treated Carr as the FedEx robber, repeatedly stating that Anderson
could not have foreseen the forced asportation.  And when announcing
Anderson's sentence, the district court did not appear to rely on the ten-
year mandatory minimum that would result from a conviction under
§ 2113(e).  Similarly, the district court declared that "[a]s to defendant
Franklin, he is not under my rulings subject to any mandatory minimums
. . . ."

way and watch her place of employment get robbed. This is particularly the case given the nature of the robbery, the absence of security in the trailer, and the small area where the tellers worked. To the extent the district court vacated Anderson's and Franklin's convictions under § 2113(e), it erred, and we grant the government's cross-appeal. The government's evidence supported all three convictions for forced accompaniment.

### D. The district court did not err by ruling that the evidence did not support Franklin's convictions for use of firearms.

In its cross-appeal, the government argues that the district court erred by granting Franklin's post-judgment motion for acquittal of his firearms charges under 18 U.S.C. § 924(c)[5] and § 2113(d).[6] After the jury returned its verdict, Franklin filed a motion for judgment of acquittal of his convictions for the firearms charges. Franklin argued that the prosecution introduced no evidence that he was present at the robbery or that he used or possessed a weapon, or knew that a weapon would be used or possessed by the other robbers. Franklin also argued that there was no evidence that a firearm was

---

[5] 18 U.S.C. § 924(c)(1)(A)(i) provides that if a firearm is used or carried or possessed in the furtherance of any crime of violence, a five year minimum sentence shall be imposed in addition to the sentence imposed for the crime of violence. Under 18 U.S.C. § 924(c)(1)(A)(iii), the minimum additional penalty increases to 10 years if the firearm is discharged.

[6] 18 U.S.C. § 2113(d) provides a separate offense if, in the course of committing or attempting to commit a bank robbery, a robber "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device."

displayed or discussed before the robbery.  The district court found "[t]here was no evidence that Franklin was at the scene of the credit union during the robbery when firearms were displayed or during the getaway when firearms were discharged."  The district court further found that, because Franklin and his co-conspirators were aware of the age of the tellers,[7] the lack of security cameras or guards, and the absence of customers inside the credit union, "the robbery would not be the sort of 'takeover' robbery that would typically necessitate the use of firearms for crowd control." The court concluded "[t]he evidence presented at trial, taken in the light most favorable to the government, does not support a conclusion that it was reasonably foreseeable to Franklin that a firearm would be used in the robbery."

In *Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946), the Supreme Court held that a co-conspirator is responsible for the foreseeable acts of his partners in crime. Whether an act is foreseeable is a fact-driven and case-specific inquiry, conducted under the deferential standard of review common to all sufficiency of the evidence claims. *See United States v. Lewis*, 787 F.2d 1318, 1324 (9th Cir. 1986).

Here, there was no direct evidence linking Franklin to the use of firearms, and no evidence that guns were discussed or present at the planning meeting.  This omission distinguishes the present case from those the government relies upon, where a gun or guns were displayed or discussed by co-conspirators before the commission of a crime. *See, e.g.*, *United States v. Hoskins*, 282 F.3d 772, 776-77 (9th Cir. 2002), overruled in part on other grounds by *United States v.*

---

[7] Barbara Wilson testified that she was 59 at the time of trial. Cervantes's age is not clear from the record.

*Contreras*, 593 F.3d 1135 (9th Cir. 2010) (en banc); *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1204–05 (9th Cir. 2000).

The government's only support for its argument that use of a firearm was foreseeable to these defendants is: (1) this was a "takeover" style robbery in which the robbers would have to subdue the credit union employees; and (2) the fact that more than one robber had a firearm is evidence that guns were part of the robbery plan. Despite these contentions, the government can point to no evidence that the robbers discussed the use of firearms before the robbery, and there was no testimony that firearms were displayed before the robbery. "[A] finding of reasonable foreseeability must be based upon something more than . . . observations about bank robberies in general." *United States v. Zelaya*, 114 F.3d 869, 871 (9th Cir. 1997). Because no evidence showed that the robbers planned to use guns to subdue or intimidate the tellers, or that Franklin was aware that at least one of his co-conspirators was carrying a gun, the district court did not err by granting Franklin's motion for judgment of acquittal on the firearms-related charges.

We do note that the district court's written judgment is inconsistent with its oral explanation of its decision to vacate Franklin's conviction under § 2113(d).[8] On remand, the

---

[8] After the jury returned its verdict finding all defendants guilty on all counts, defendants filed Rule 29 motions for a judgment of acquittal on the forced accompaniment charge (§ 2113(e)), and the firearms charges (§ 2113(d) and § 924(c)). The court denied these motions "with the exception of Franklin's motion to dismiss the firearms charges as applied to him under 18 U.S.C. § 924(c) and 18 U.S.C. § 2113(d)." Consistent with its finding that there was no evidence of a plan to use guns, the court

district court shall enter an amended judgment reflecting that Franklin was acquitted of the § 924(c) gun charge and the § 2113(d) gun enhancement.

### E.  The district court's *Alleyne* error was harmless.

Under 18 U.S.C. § 924(c), anyone who uses or carries a firearm in relation to a crime of violence is subject to a mandatory minimum sentence of five years, *id*. § 924(c)(1)(A)(i).  This enhancement is to be imposed in addition to the punishment for the particular crime of violence.  It rises to a ten-year enhancement if the firearm was discharged during commission of the underlying crime. *Id*. § 924(c)(1)(A)(iii).

The jury found that both Carr and Anderson "us[ed] and carr[ied] a firearm during and in relation to a crime of violence" in violation of 18 U.S.C. § 924(c), but the jury did not make any findings about whether either Anderson or Carr discharged their weapons.  At sentencing, the district court found that the defendants were responsible for discharging firearms, and ruled that § 924(c)(1)(A)(iii)'s ten-year mandatory minimum penalty applied.[9]   Both Carr and

---

acquitted Franklin of the charge under § 924(c) in its judgment order, but it erroneously entered judgment against him under § 2113(d).

[9] We are mindful that Fields testified a third robber participated in the armed robbery, and that Monken testified that three robbers fled the credit union.  Neither Carr nor Anderson argue on appeal that the evidence was insufficient to show which two robbers in the getaway car fired shots at the pursuing security van.  At trial, Fields was asked "So there are three men in the car, and two are firing, and you're not sure which of the two?" Fields replied, "I know which of the two."  But she was not asked to identify the two shooters.

Anderson received ten-year enhancements for discharging firearms during the robbery.

After defendants filed their notices of appeal, the Supreme Court handed down its decision in *Alleyne*, extending the reasoning of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to mandatory minimum sentences. *Apprendi* established the principle that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Analogously, *Alleyne* held that "[f]acts that increase the mandatory minimum sentence are . . . elements and must be submitted to the jury and found beyond a reasonable doubt." 133 S. Ct. at 2158. *Alleyne*'s holding applies to the defendants' appeals because they were still pending when *Alleyne* was decided. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).

The government concedes that the trial court's application of 18 U.S.C. § 924(c)(1)(A)(iii)'s ten-year mandatory minimum enhancement was not supported by any jury finding, and thus it presumptively violated the Supreme Court's ruling in *Alleyne*. But the government correctly notes that this court has held that *Apprendi* errors do not require reversal if the government can show the errors were harmless. *United States v. Salazar-Lopez*, 506 F.3d 748, 755 (9th Cir. 2007). An *Apprendi* error is harmless only "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Neder v. United States*, 527 U.S. 1, 17 (1999).

The government argues there is no reasonable probability that the jury would have acquitted Anderson or Carr of discharging a firearm because there was overwhelming and uncontroverted evidence adduced at trial that two of the co-conspirators shot at the security van during the course of the getaway. We agree. The government presented the jury with undisputed evidence through Fields and Monken that the robbers fired at Monken's car while fleeing the scene. This evidence was not challenged by the defense, no conflicting evidence was introduced, and the defendants did not argue in closing that no shooting had taken place. Moreover, as the jury was required to decide whether the defendants had "us[ed] and carr[ied] a firearm" during the crime, the defendants had incentive to present at trial any evidence tending to show that firearms were not used. We therefore conclude the *Alleyne* error was harmless because all of the trial evidence on this point supported the court's implicit finding that guns were discharged during the course of the robbery.

**F.  The district court sufficiently justified its departure from the recommended guidelines range when sentencing Franklin.**

The district court calculated Franklin's sentencing guideline range as 92–115 months and sentenced Franklin to a total of 144 months in prison. The court explained that Franklin "was involved in this crime as a co-conspirator and seemingly the architect — or one of the architects." Franklin argues that the judge committed procedural error by failing sufficiently to justify an above-guidelines sentence. We do not find this argument persuasive.

Franklin did not object to his sentence before the district court, so we review it for plain error.[10]  *United States v. Rangel*, 697 F.3d 795, 805 (9th Cir. 2012).  A judge must explain the rationale relied upon when imposing an above-guidelines sentence, and the explanation must be sufficient to permit meaningful appellate review.  *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (en banc) (citing *Rita v. United States*, 551 U.S. 338, 356 (2007)).

Here, the district court noted that Franklin's sentence was based on "the court's consideration of the guidelines and the sentencing factors under § 3553(a), the nature and circumstances of the offense, and the history and characteristics of the defendant."  The court mentioned Franklin's serious prior convictions, including convictions involving the use of firearms.  Finally, citing evidence that Franklin had previously worked at Vons Distribution Center and been a member of the credit union, the district court resolved that Franklin was likely the architect, or one of the architects, of the robbery scheme.

We conclude that the district court's justification, though brief, was not inadequate.  Franklin's apparent role as mastermind of the robbery is not reflected in the recommended sentencing range for his crimes of conviction and it was within the district court's discretion to account for this role with an above-guidelines sentence.  The district court

---

[10] "Plain error will be found only if the error was highly prejudicial and there was a high probability that the error materially affected the verdict." *United States v. Bosch*, 951 F.2d 1546, 1548 (9th Cir. 1991) (quotation omitted).  To prove plain error, Franklin must show that "(1) there is 'error'; (2) it was 'plain'; and (3) the error affected 'substantial rights.'" *United States v. Garrido*, 713 F.3d 985, 994 (9th Cir. 2013) (quoting *United States v. Recio*, 371 F.3d 1093, 1100 (9th Cir. 2004)).

did not commit plain error by imposing an above-guidelines sentence.  Franklin's argument that his sentence was substantively unreasonable fails for the same reasons.

## IV.    Conclusion

If the district court vacated Anderson's conviction for false accompaniment under § 2113(e), it erred and we reverse this portion of its judgment in case number 12-50135 and grant the government's cross-appeal in case number 12-50169.  If the district court vacated Franklin's conviction for false accompaniment under § 2113(e), it erred and we reverse this portion of its judgment in case number 12-50089 and grant the government's cross-appeal in case number 12-50144.

The government's cross-appeal regarding Franklin's gun conviction under § 924(c) and corresponding sentencing enhancement under § 2113(d) in case number 12-50144 is denied.  On remand, the district court shall enter a corrected judgment in case number 12-50089 reflecting its acquittal of Franklin on the § 924(c) gun charge and the § 2113(d) gun enhancement.

The remainder of the district court's judgments in cases number 12-50082, 12-50089, 12-50135, 12-50144, and 12-50169 are affirmed.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.