NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-50041 |
| Plaintiff-Appellee, | D.C. No. 2:19-cr-00166-VAP-1 |
| v. | |
| CHRISTOPHER MYUNG KIM, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, Chief District Judge, Presiding

Argued and Submitted May 13, 2021
Pasadena, California

Before: OWENS and R. NELSON, Circuit Judges, and HELLERSTEIN,** District
Judge.

Christopher Kim appeals from his convictions and sentence for his

participation in a conspiracy to rob a warehouse of marijuana and cash while

serving a fake search warrant. As the parties are familiar with the facts, we do not

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Alvin K. Hellerstein, United States District Judge for
the Southern District of New York, sitting by designation.

recount them here. We affirm.

1. The district court properly instructed the jury regarding the specific intent elements of 18 U.S.C. §§ 241 (conspiracy against rights) and 242 (deprivation of rights under color of law). In *Screws v. United States*, 325 U.S. 91, 107 (1945), the Supreme Court interpreted section 242 to require more than a "generally bad purpose," but also the specific "purpose to deprive the [victim] of a constitutional right." The Court later read the same "specific intent" element into section 241. *See Anderson v. United States*, 417 U.S. 211, 223 (1974). The district court's instructions here, adopted from a joint proposal by the parties, tracked the statutory language of sections 241 and 242 and included specific intent language requiring proof of a purpose to deprive the victim of a constitutional right, consistent with *Screws*.

2. Sufficient evidence supports the jury's verdict as to the brandishing enhancement in count five. Brandishing under 18 U.S.C. § 924(c)(1)(A)(ii) requires the government to prove "1) the open display of the firearm, or knowledge of the firearm's presence by another in some manner, and 2) the purpose of intimidation." *United States v. Beaudion*, 416 F.3d 965, 968 (9th Cir. 2005). The evidence at trial related to brandishing provided ample basis from which "any rational trier of fact could have found the evidence sufficient." *United States v. Pelisamen*, 641 F.3d 399, 409 n.6 (9th Cir. 2011) (citation omitted). The jury

heard evidence that the firearm was openly displayed, another was aware of its presence, and that the purpose of the display was intimidation. That the weapon was holstered by a member of law enforcement and that there may have been multiple motives for displaying the weapon is immaterial. *See Beaudion*, 416 F.3d at 968.

3. The district court did not plainly err in admitting Special Agent Truong's lay opinion testimony under Federal Rule of Evidence 701. While a police officer's employment "does not endow him with any freestanding license to offer opinions," an officer "may offer interpretations of ambiguous conversations based upon his direct knowledge of the investigation, or translate the drug jargon used by the targets of his investigation." *United States v. Perez*, 962 F.3d 420, 435 (9th Cir. 2020) (internal quotation marks and citation omitted); *see also United States v. Gadson*, 763 F.3d 1189, 1210 (9th Cir. 2014). Agent Truong's testimony was therefore properly admitted. And to the extent there was any error, it was not plain, and its admission did not have a "high probability" of "materially affect[ing] the verdict." *United States v. Carr*, 761 F.3d 1068, 1083 n.10 (9th Cir. 2014) (citation omitted).

4. The district court erred in admitting co-conspirator hearsay testimony during Agent Truong's testimony, but the error was harmless. "Federal Rule of Evidence 801(d)(2)(E) . . . excludes from the definition of 'hearsay' those

statements made by a coconspirator during the course and in furtherance of the conspiracy." *United States v. Shryock*, 342 F.3d 948, 982 (9th Cir. 2003). At trial, Agent Truong testified about statements made by Kim's co-conspirator Marc Antrim about the origins of the conspiracy. As the government concedes, a statement made to law enforcement about the origins of the conspiracy after it has been carried out is not a statement made "during the course and in furtherance of the conspiracy." *Id.* Nor is it admissible as a "statement against interest" under Rule 804(b)(3) as that exception applies only to an unavailable declarant, and Antrim was available and testified in court. *Id.* at 981. It is also not admissible as a "prior consistent statement" under Rule 801(d)(1)(B), as the government now argues, because that rule only applies where the declarant was "subject to cross-examination concerning the statement," rather than as a way "to counter all forms of impeachment or to bolster the witness merely because she has been discredited." *Tome v. United States*, 513 U.S. 150, 156-57 (1995) (citation omitted).

Nonetheless, this error was harmless. We "will only reverse if an erroneous evidentiary ruling more likely than not affected the verdict." *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004) (internal quotation marks and citation omitted). Because Antrim testified during trial and offered the same explanation about his initial connection to Kim, its admission through Agent Truong's testimony was harmless.

5. The district court did not err in admitting co-conspirator hearsay statements during the testimony of Kevin McBride, a member of the conspiracy to rob the warehouse. We "review for clear error the district court's underlying factual determinations that a conspiracy existed and that the statements were made in furtherance of that conspiracy." *Shryock*, 342 F.3d at 981. Kim has not demonstrated that the district court clearly erred in concluding that Antrim's statements to McBride, made during the conspiracy about his relationship with Kim, did not further the conspiracy.

6. The district court did not commit sentencing error. In explaining its conclusion that the offense was violent, the district court incorrectly commented that the victims were placed at gunpoint. But the district court also emphasized that one of the guards testified to having been traumatized and thinking she would be killed during the robbery. In light of that additional observation, and the fact that each of the co-conspirators was openly carrying what looked like handguns or assault rifles to intimidate the guards, Kim has not shown a "reasonable probability" that the district court's error in remarking that the guards were held at gunpoint "adversely affected his sentence." *United States v. Herrera*, 974 F.3d 1040, 1045 (9th Cir. 2020).

Nor did the district court err in concluding that Kim was an "organizer or leader" under U.S.S.G § 3B1.1(a), which provides for a four-level enhancement

5

"[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." "[T]he organizer enhancement properly applies to a defendant who organizes others in the commission of the criminal activity even though he does not retain a supervisory role over the other participants." *United States v. Doe*, 778 F.3d 814, 824 (9th Cir. 2015) (internal quotation marks and citation omitted). The government introduced significant evidence of Kim's role in organizing the robbery. Therefore, the district court did not err in concluding Kim was an "organizer *or* leader." U.S.S.G. § 3B1.1(a) (emphasis added).

The district court's below-Guidelines sentence was not substantively unreasonable due to sentencing disparities between Kim and his co-conspirators. The court explained that, unlike Kim, his co-conspirators accepted responsibility and pled guilty and/or cooperated.

**AFFIRMED.**

6