**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Trane E. DAVIS, Defendant–Appellant.**

**No. 94–2380.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1994.

Decided Feb. 21, 1995.

Rehearing Denied April 11, 1995.

Richard H. Lloyd, Asst. U.S. Atty. (argued), Crim. Div., Fairview Heights, IL, for plaintiff-appellee.

Charles M. Shaw, James J. Knappenberger (argued), Shaw, Howlett & Knappenberger, Clayton, MO, for defendant-appellant.

Before BAUER, REAVLEY,* and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

On January 6, 1994, Trane Davis stole $71,000 from the Olin Employees Credit Union in Godfrey, Illinois. On March 22, 1994, a jury of Davis' peers convicted him of three crimes related to this robbery: 1) robbery of a credit union, in violation of 18 U.S.C. § 2113(a); 2) using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1); and 3) forcing a victim to accompany him during a robbery, in violation of 18 U.S.C. § 2113(e). The district judge sentenced Davis to a total of 222 months in the federal penitentiary. Davis appeals several aspects of his conviction and sentence, but we affirm.

Sarah Woodman, Branch Supervisor of the credit union, arrived at the credit union at 8:30 A.M. that January morning; she was responsible for ensuring the credit union's timely opening at 9:00. As she pulled into the parking lot at the credit union, Woodman saw Davis sitting in his car. She recognized Davis from prior dealings with him at the credit union. Woodman parked her car and walked toward the front door of the credit union. Davis then left his car and approached Woodman. Davis said that he wanted to discuss some documentation required for a loan he was pursuing from the credit union, but Woodman informed Davis that he must return when the credit union was open. At that point, Woodman turned away from Davis and walked to the front door.

As Woodman was putting her key into the lock, Davis pushed her, jammed something into her side, and said, "you're going to get me all the money." Woodman looked down

and saw that what Davis was pushing into her side was a large black gun about fourteen to eighteen inches long. As Woodman tried to unlock the door, Davis told her that she would get him all the money or he would kill her; he repeated this threat throughout the robbery.

Once inside the credit union, Davis paraded Woodman about the credit union—to deactivate the alarm, to her desk to get keys to the vault, to the vault, to the lobby to turn on the lights, back to the vault, inside the vault, and, finally, back to the lobby—all the while holding the gun to her side and threatening to kill her. While inside the vault, Davis stuffed a total of $71,000 into his jacket and a bag. The money was wrapped by denomination in plastic packets from the Federal Reserve Bank held together by plastic string. After obtaining the money and returning to the lobby, Davis insisted that Woodman accompany him on his getaway. When Woodman refused, Davis fled.

■ Davis' first argument is that his conviction pursuant to 18 U.S.C. § 2113(e) was improper because the statute does not apply to his actions. That section states:

Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any persons to accompany him without the consent of such person, shall be imprisoned not less than 10 years, or punished by death if the verdict of the jury shall so direct.

Davis contends that he did not force Woodman to accompany him within the meaning of the statute.

Properly fleshed out, Davis' argument is that this section is designed to punish the kidnapping of bystanders in conjunction with a bank robbery. He claims that the statute cannot apply to his conduct because he did not force Woodman to leave the credit union

---

* The Honorable Thomas M. Reavley of the United States Court of Appeals for the Fifth Circuit is sitting by designation.

with him; he left her there. We are not persuaded.

■ Davis ignores the critical fact supporting his conviction on this count: that he forced Woodman, at gunpoint, to go from the parking lot into the credit union. Clearly, the phrase "forces any persons to accompany him without ... consent" encompasses forcing someone outside a building to enter the building. There is nothing in the text of the statute that requires that the elements of a federal kidnapping or any other crime be satisfied. The statute simply requires what it says: forced accompaniment without consent. It is an apt description for what Davis compelled Woodman to do.

Our position is consistent with that of the other circuits in similar cases. The Fifth Circuit, in *United States v. Reed*, 26 F.3d 523 (5th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1116, 130 L.Ed.2d 1080, confronted the identical factual scenario and legal issue: whether § 2113(e) applies to a bank robber who forces a bank employee to open the facility and then accompany him into the bank. It held that § 2113(e) so applies. The Eleventh Circuit, in *United States v. Bauer*,[1] 956 F.2d 239 (11th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992), dealt with an analogous situation. In that case, the defendant forced two employees to accompany him from the rear of the bank to the front door with the intention of taking the employees as hostages; he abandoned his plan, however, when he realized that police were awaiting his getaway immediately outside the bank. *Id.* at 241. The court held that this conduct also satisfied § 2113(e). Davis' conduct lines up quite nicely with that of the defendants in *Reed* and *Bauer*, and we join those circuits in holding that § 2113(e) applies to this behavior.

■ In a vein similar to that of his first argument, Davis next argues that the district court erred when it enhanced his sentence under United States Sentencing Commission, *Guidelines Manual*, § 2B3.1(b)(4)(A). Davis

claims that because he did not force Woodman to accompany him, § 2B3.1(b)(4)(A) does not apply. His argument is feckless.

The Guidelines could not be clearer with respect to this matter. Section 2B3.1(b)(4)(A) states that "[i]f any person was abducted to facilitate commission of the offense or to facilitate escape, increase [defendant's offense level] by 4 levels." Further, the background section of the commentary to this section states that "[t]he guideline provides an enhancement for robberies where a victim was forced to accompany the defendant to another location." USSG § 2B3.1(b)(4)(A), comment. (backg'd). This commentary restates the definition of "abducted" meant to apply to the Guidelines generally. *See* USSG § 1B1.1, comment. (n. 1(a)).

Our analysis with respect to this issue, therefore, is identical to that under 18 U.S.C. § 2113(e). Davis' compulsion of Woodman at gunpoint to accompany him from the credit union parking lot to inside the credit union easily satisfies the Guidelines' requirement of forced accompaniment to another location. Accordingly, the district court properly increased Davis' offense level pursuant to § 2B3.1(b)(4)(A).

■ Davis' third argument also concerns his sentence. He claims that § 4A1.2(d)(2)(A) of the Guidelines, which directs an increase of two levels to a defendant's criminal history for certain offenses committed prior to the age of eighteen and was applied by the district court in Davis' case, is unconstitutional because it violates the Due Process Clause of the Fifth Amendment. Davis argues that this established practice violates the Constitution because it is "unfair" to defendants. We join the Ninth and Eleventh Circuits in holding that no due process violation is involved in the Guidelines' directive to consider juvenile convictions in a defendant's criminal history. *See United States v. Williams*, 891 F.2d 212 (9th Cir.1989), *cert. denied*, 494 U.S. 1037, 110 S.Ct. 1496, 108 L.Ed.2d 631 (1990); *McCullough v. Singletary*, 967 F.2d 530 (11th Cir.

---

1. The defendant is no relation to the writer, as far as I know, although anything is possible in this strange and wonderful world.

1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1423, 122 L.Ed.2d 792 (1993).

It is important to understand that Davis is not claiming a defect in the prior juvenile proceedings that were considered by the district judge in calculating Davis' criminal history. Overlooking the fact that this is the wrong forum in which to collaterally attack prior convictions, juvenile or adult, *see United States v. Rogers,* 45 F.3d 1141 (7th Cir. 1995) (citation omitted), had Davis claimed that a juvenile conviction was obtained without the benefit of counsel or that allegations of particular conduct were simply false, he would have been asserting a denial of due process. But in this prosecution and imposition of sentence, Davis received all the process he was due. Davis' claim is a more fundamental (and abstruse) one: that the practice of considering one's criminal juvenile conduct in determining punishment for a crime runs counter to our system of justice. His, however, is an incorrect and self-serving perspective.

Federal sentencing strives to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant correctional treatment. 18 U.S.C. § 3553(a)(2). As the Introductory Commentary to Chapter Four of the Sentencing Guidelines makes clear, consideration of a defendant's criminal history directly serves these goals. "A defendant with a prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment." *Guidelines Manual,* Ch. 4, Pt. A, intro. comment. Consideration of criminal history also furthers the goals of deterrence and the protection of society while serving as a potential indicator of the likelihood of the defendant's rehabilitation. *Id.*

As we noted many years ago, it is imperative that the defendant's sentence account for his criminal history "from the date of birth up to and including the moment of sentencing." *United States v. Madison,* 689 F.2d 1300, 1314 (7th Cir.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983). "[T]he consideration of the defendant's juvenile record is essential, because it is clear that the 'magic age' of eighteen, seventeen, or sixteen, whatever it may be in a specific state, cannot wipe out all previous contacts with the law." *Id.* at 1315. These pubescent transgressions, when considered along with adult offenses, help the sentencing judge to determine whether the defendant has simply taken one wrong turn from the straight and narrow or is a criminal recidivist.

Lest one believe that this system punishes a defendant too harshly for offenses committed while he was young and foolish, the Guidelines authorize the sentencing judge to adjust a defendant's criminal history if the judge believes the criminal history does not adequately reflect the defendant's past conduct or his tendency to recidivism. *Guidelines Manual,* § 4A1.3. But this option is available only after all the information is presented, including the defendant's juvenile record, and the judge evaluates the convict's criminal record as a whole. The scheme, then, is designed to meet the sentencing objectives while maintaining a sense of fairness by offering the sentencing judge some discretion. Accordingly, the consideration of a defendant's juvenile record is important to achieving the congressional goals of federal sentencing, is not "unfair," and does not remotely infringe on the defendant's Fifth Amendment rights.

■ Finally, Davis complains of the government's presentation of expert testimony. The government adduced an expert who testified as to Davis' fingerprints on money wrappings recovered by the police. Davis conceded that the government's witness was indeed an expert in the area of fingerprint analysis. The expert testified that he identified between ten and sixteen similarities between the fingerprint on the wrapping and Davis' fingerprint on file; he did not, however, produce any visual aids to show the jury his comparison of the two prints. Davis claims that the district court somehow abused its discretion in admitting this expert testimony and instructing the jury regarding the weight a jury may accord expert testimony by giving the Seventh Circuit Pattern

Jury Instruction 3.27.[2] We say "somehow" because Davis does not explain the grounds for his complaint; he simply states that the district court erred in proceeding in this manner. This argument is specious; the district court handled this issue properly.

Davis does not contend that the expert was not qualified or that there was inadequate foundation for his opinion. He appears to complain that the expert lacked credibility. Davis's counsel subjected the government's expert to rigorous cross-examination about his findings and his failure to present visual support for his position; he also argued this point to the jury in his closing argument. That was the proper vehicle by which Davis could persuade the jury that the expert witness was not credible. It is, after all, the jury's mission to evaluate a witness' credibility. *E.g., United States v. Foster,* 939 F.2d 445, 453 (7th Cir.1991). Pattern instruction 3.27 conveys that very point. In any event, the district court handled the issue of expert testimony properly.

For the foregoing reasons, Davis' conviction and subsequent sentencing is

AFFIRMED.

2. The instruction states:

You have heard testimony of an expert witness. This testimony is admissible where the subject matter involved requires knowledge, special study, training, or skill not within ordinary experience, and the witness is qualified to give an expert opinion.

However, the fact that an expert has given an opinion does not mean that it is binding upon you or that you are obligated to accept the expert's opinion as to the facts. You should assess the weight to be given to the expert opinion in the light of all the evidence in this case.