**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Darrell K. TAYLOR and Ali R. Robinson,**
**Defendants–Appellants.**

**Nos. 97–1488, 97–1489.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1997.

Decided Oct. 28, 1997.

Gillum Ferguson (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

Jerry B. Kurz (argued), Hall & Kurz, Chicago, IL, for Defendant–Appellant.

Before CUDAHY, FLAUM and MANION, Circuit Judges.

MANION, Circuit Judge.

Darrell Taylor and Ali Robinson were convicted of armed robbery and using a firearm during the commission of a crime of violence. Robinson appeals his conviction claiming that he was denied effective assistance of counsel and effectively prohibited from testifying at trial. Both Robinson and Taylor appeal their sentences arguing that the district court improperly enhanced their sentencing level for abduction and wrongfully ordered restitution. We affirm.

## I. Background

Sanina Campbell, a cousin of defendant Darrell Taylor, worked at the First National Bank of Chicago, Joliet Branch. Through her employment with First National, Campbell became familiar with the bank's security procedures. She relayed this knowledge to Taylor and Ali Robinson, who, after some preliminary reconnaissance to verify Campbell's report, decided that she was right—it would be easy to rob the First National branch.

Armed with this inside information (and a semiautomatic handgun), on July 17, 1996 Taylor and Robinson went ahead with a plan. That morning, as part of her duties as teller supervisor for the bank, Alison Cardona arrived at 6:25 a.m. to open the bank. After driving around the parking lot, visually checking the outside of the building and looking for anything unusual, Cardona parked her car and waited for Krista Simmons to arrive. Simmons, who was also assigned the job of opening the branch, stayed in her car while Cardona entered the bank. After entering the lobby, Cardona disarmed the general alarms, turned on the lights, disarmed the two vault safes, and checked the safe deposit rooms. Finding nothing out of the ordinary, Cardona returned to the lobby, ex-

ited one set of doors and leaning out the second, waved for Simmons to enter.

As Cardona watched Simmons walk toward the bank, one of the defendants jumped out of the bushes and held a gun to Cardona saying "Hold it right there." Cardona screamed as one defendant rushed her and the second rushed Simmons. Cardona was dragged inside the lobby and Simmons was dragged by her hair, with a gun held to her head, from the parking lot into the bank. Both men had nylon masks covering their faces and wore duct tape over their fingers.

Once inside, Taylor and Robinson forced the women to take them to the vault. The defendants took over $133,000, then duct-taped the women together. The defendants fled with the money, unwittingly leaving behind the empty duct tape roll. Once the robbers were gone, Simmons and Cardona freed themselves and called the police.

A few weeks later, Taylor and Robinson were arrested, and later a grand jury indicted them for bank robbery and using a firearm to commit a crime of violence.[1] Both Taylor and Robinson pleaded not guilty and a jury convicted both of them. The court sentenced Taylor to 181 months of imprisonment and Robinson to 235 months of imprisonment, and ordered that Robinson and Taylor each provide $50,000 in restitution to the bank. Robinson appeals his conviction and sentence and Taylor appeals his sentence.

## II. Analysis

### A. Robinson's Conviction

On appeal, Robinson contends that his conviction should be reversed because he was denied effective assistance of trial counsel and was prevented from testifying in his own defense. The facts underlying Robinson's challenges follow.

After the government rested its case, the court asked the defendants whether they had any live testimony. Robinson's attorney, Kent Carlson, replied: "No, just stipulations, your Honor. I have spoken with my client. I have advised him of his right to testify. He has elected to stand on his right."[2] The defense then presented several stipulations and exhibits. Once Carlson finished presenting that evidence, the court (outside of the presence of the jury) advised Robinson that the decision whether to testify was "a personal right" and "yours and yours alone." Robinson said that he understood, and when asked whether he had given the matter thought, replied "Some." Asked whether he wanted to testify, Robinson answered "Not at this time." The court told Robinson that this was the only time he had, and Robinson stated that "I know this is it. No." The court then told Robinson he could think about it overnight and if he changed his mind, tell his lawyer and he could testify in the morning.

The next morning, which was a Friday, as soon as court reconvened, Robinson's attorney stated:

Judge, there is one matter that I think I should bring to the Court's attention. Mr. Robinson has indicated to me thirty seconds ago he wishes to testify in this matter. This is my first time hearing of it. As I spoke to him last night, I was under the impression he was not going to testify. I am not prepared to put him on the stand. This comes as a complete surprise to me.

The court asked Carlson whether he wanted fifteen minutes to speak with the client and Carlson replied:

Judge, I will try to speak with him. I don't know that fifteen minutes is going to be enough time for me to be able to prepare a direct examination. Additionally, my entire closing argument is premised upon the fact that he is not testifying. In light of his testimony, I am going to have

---

1. A superseding indictment charged Lawanda Carruthers, who drove the getaway car, and Campbell. The charges against Campbell were dismissed and pursuant to a plea agreement Carruthers pleaded guilty to the reduced charge of receiving property stolen in a bank robbery, and in exchange testified at Taylor and Robinson's trial.

2. Read in context of the later proceedings, it appears that Carlson meant that Robinson was standing on his right not to incriminate himself. In any event, the next day Robinson told the court that he wished to testify, and the court accepted this decision, mooting any question about the meaning of Carlson's earlier statement.

to take time to review my entire closing argument. I had hoped that if something was going to happen I would have heard prior than thirty seconds before your Honor has taken the bench.

The court then told Robinson that it understood that he wished to testify, and Robinson nodded in agreement. In order to give Robinson's attorney time to prepare, the court continued the trial until Monday. Robinson then exclaimed: "I want another lawyer. I get no cooperation at all, I feel like I've been railroaded through this entire process." The record indicates no response to Robinson's outburst. Rather, the record indicates that the district court called in the jury and informed it that the trial would be continued until Monday and that it was dismissed until then. After the jury was dismissed, Carlson said:

> Your Honor, one matter before your Honor leaves the bench. Based on what Mr. Robinson has just said, I feel compelled at this point in time to make a motion to withdraw as his attorney and instead new counsel be appointed to-

The court interrupted saying:

> I think that is a frivolous motion. I think the work that you have done in this case, including the pretrial motions, your cross-examination of witnesses and your general preparation and experience in the case indicate that your client has received effective assistance of counsel. I guess one cannot do anything about the evidence. The evidence is what the evidence is. And you have done the best that anyone could expect with the evidence, and I find that there is no basis for a motion to withdraw.

On Monday when court reconvened, the court asked Carlson whether Robinson was testifying, to which he replied: "Judge, that is what we're all waiting to know for sure. I don't have an answer." The court then called in the jury and asked whether the defense had any more evidence. After conferring with his client, Carlson, in Robinson's presence, replied: "Mr. Robinson has advised me no, your Honor." Closing arguments then proceeded. Following jury deliberations, the jury convicted Robinson on both counts.

■ Robinson contends that he "adequately raised and attempted to assert his right to testify. However, when he did, his attorney and the trial court boxed him into the corner of being represented by an attorney who evidently did not want him to testify, and a judge who refused to entertain a motion for new counsel or to even inquire into the cause of the problem."

■ The record does not support Robinson's position. The trial transcript establishes that once Robinson asserted his right to testify, the court and his attorney did everything in their power to accommodate that decision. His attorney informed the court that he needed more time to prepare Robinson and also to modify his closing argument. That was on Friday morning, and the court granted a continuance until the following Monday. Moreover, there is no constitutional right to be represented by an attorney who shares the defendant's belief as to the best trial strategy. Thus, even if Carlson did not think it advisable for Robinson to testify (Robinson claims his attorney did not "want" him to testify), that difference in opinion does not constitute a constitutional violation. Robinson's reliance on *United States v. Curtis*, 742 F.2d 1070, 1076 (7th Cir.1984), is also misplaced. In *Curtis*, we stated that "[i]f a defendant insists on testifying, however irrational that insistence might be from a tactical viewpoint, counsel must accede." *Id.* But there is no evidence that Robinson wanted to testify and that Carlson failed to adhere to that decision. Rather, the evidence establishes that the court informed Robinson that the choice to testify was his and his alone to make and that after being so informed, Robinson told the court that he did not wish to testify. Then, merely five minutes before closing arguments were scheduled to begin, Robinson told Carlson that he wished to testify. Carlson respected this decision and in fact succeeded in having the trial continued over the weekend in order to prepare Robinson. Only after the continuance, and then only after court was back in session, did Robinson again change his mind and decide not to testify. While at this time the court did not ask Robinson whether he wished to

testify, attorney Carlson spoke on his behalf. And Robinson does not now claim that he told his attorney that he wished to testify and that Carlson misrepresented his position to the court, or that he had indicated to Carlson that he wished to testify but that Carlson refused to allow it. Instead, Robinson objects to Carlson's view that he should not testify, but as explained above there is no constitutional right to have an attorney who agrees with a defendant's desire to testify.

■ Furthermore, the evidence of Robinson's guilt was compelling. Specifically, the evidence included testimony by one of the victims identifying him as the robber. Lawanda Carruthers, who had driven the getaway car, gave detailed testimony of Robinson planning the robbery, meeting her immediately afterward with the money, and counting it when they returned to her home. The evidence also established that on the morning of the robbery, two phone calls were made between the house at which Robinson was staying and the house where Taylor was staying with Carruthers. And immediately following the robbery, Robinson showed and used substantial amounts of cash, the source of which he could not account for. He purchased a 1989 Nissan Maxima with $4,500 in cash, and when he was arrested at his father's house, the police discovered $14,444 in currency hidden in the basement. In addition to the testimony, Robinson's fingerprints were found on the duct tape roll used to bind the two tellers and left behind in the vault area. On appeal, Robinson does not describe the testimony that he would have presented had he taken the stand. This omission, coupled with the overwhelming evidence of Robinson's guilt, establishes that any error causing him not to testify was harmless beyond a reasonable doubt. *United States v. Zillges,* 978 F.2d 369, 372 (7th Cir.1992); *Ortega v. O'Leary,* 843 F.2d 258, 262 (7th Cir.1988).

■ Robinson also argues that he was denied effective assistance of trial counsel and that the district court erred in failing to grant Carlson's motion to withdraw. Robinson's challenge to his attorney's representation is two-fold. First, Robinson contends that he was denied effective assistance of counsel because his attorney was hostile to

his decision to testify which created a conflict of interest preventing him from receiving effective assistance of counsel. Again the record does not support Robinson's view; after Robinson indicated an intent to testify, Carlson requested additional time, explaining that he would need time to prepare a direct examination and to review his closing argument, and Carlson succeeded in obtaining a three-day continuance.

Robinson's second argument is that there was a breakdown in communication so great that it prevented Carlson from presenting an adequate defense. In support of this alleged breakdown, Robinson points to Carlson's statement made on the Monday following the continuance that he did not know whether Robinson would testify. But as the transcript shows, this was because Robinson himself did not know whether he wanted to testify until the middle of trial: on Thursday Robinson said no; on Friday it was yes; by Monday it was no again. Carlson cannot be blamed for being unable to read the ever-changing mind of his client.

■ Finally, Robinson argues that the district court erred by failing to hold a hearing after he expressed dissatisfaction with his attorney. As noted above, Robinson expressed dissatisfaction with his attorney following the court's continuance. Later at sentencing, Robinson also informed the court that he wanted a new attorney, that he had spoken with another attorney, and that he did not want Carlson to represent him. However, because no other attorney appeared on behalf of Robinson, and because the court found Carlson provided effective assistance to Robinson, the court denied Carlson's renewed motion to withdraw. Robinson contends that the district court was required to hold a hearing on the matter when he objected during the trial and at sentencing.

While the district court did not hold a hearing during trial on the alleged conflict between Robinson and Carlson, Robinson, in objecting to Carlson's representation, said only that he got "no cooperation at all" and believed that he was being "railroaded" through the process. Given the vagueness of these objections, further inquiry is ordinarily

required in these circumstances, including, if necessary, a hearing. *See United States v. Zillges,* 978 F.2d 369, 372 (7th Cir.1992) ("[a] court faced with a non-specific substitution motion must make a proper inquiry and a ruling."). Nonetheless, as we explained in *Zillges,* the denial of a motion for substitution of counsel will be upheld even in the absence of a more thorough inquiry into the alleged conflict, if the defendant actually received effective representation of counsel. *Id.* He did. As the district court found, Carlson provided vigorous representation in preparation for trial, at trial, and at the sentencing stage. The court further found that "[t]he record is clear that he has acted diligently and professionally on your behalf." After reviewing the record, we agree.

■ In arguing the contrary, i.e., that he received ineffective assistance from Carlson, Robinson's main contention is that Carlson was hostile toward the idea of him testifying.[3] First, the record fails to support any such hostility, and second, even if Carlson were hostile toward such a strategy, a disagreement about trial strategy does not require substitution of counsel. *United States v. Hillsberg,* 812 F.2d 328, 334 (7th Cir.1987).

## B. Robinson and Taylor's Sentences

■ Because both Robinson and Taylor present the same challenges to their sentences, we consider them together. First, Robinson and Taylor contend that the district court erred in enhancing their sentences pursuant to U.S.S.G. § 2B3.1(b)(4)(A) for abduction. Section 2B3.1(b)(4)(A) provides that the offense level for robbery should be increased by four levels "[i]f any person was abducted to facilitate commission of the offense or to facilitate escape...." The application note to the Guidelines states that "[t]he Guideline provides an enhancement for robberies where a victim is forced to accompany the defendant to another location...." U.S.S.G. § 2B3.1, comment. (backg'd). The Guidelines also define the term abduction and provide the following example:

> "Abducted" means that a victim was forced to accompany an offender to a different location. For example, a bank robber's

forcing a bank teller from the bank into a getaway car would constitute an abduction. U.S.S.G. § 1B1.1 (comment) n. 1(a).

In *United States v. Davis,* 48 F.3d 277, 279 (7th Cir.1995), we considered an abduction enhancement pursuant to 2B3.1(b)(4)(A) under very similar circumstances. In *Davis,* the defendant forced, at gunpoint, the Branch Supervisor for the Olin Employees Credit Union from the parking lot into the credit union. We concluded that Davis' conduct "easily satisfies the Guidelines' requirement of forced accompaniment to another location." Accordingly, in *Davis,* we affirmed the district court's four-level sentencing enhancement made pursuant to section 2B3.1(b)(4)(A).

Defendants attempt to distinguish *Davis,* arguing first that it does not control because in *Davis* the defendant was convicted of violating 18 U.S.C. § 2113(e), while here Robinson and Taylor were convicted of violating §§ 2113(a) and 2113(d). While it is true that the underlying offenses are different, the Sentencing Guideline at issue is the same—U.S.S.G. § 2B3.1(b)(4)(A). That the underlying conviction results from different sections of the criminal code is irrelevant.

Defendants also attempt to distinguish the facts in *Davis.* In *Davis* the defendant had paraded the supervisor around the credit union with a gun to her head and had ordered her into the getaway car, but when the supervisor refused, Davis left her in the bank. Here, as the defendants point out, they did not parade the tellers around the bank, or order them into a getaway car. Nonetheless, these factual differences are irrelevant. In *Davis,* we concluded that the abduction enhancement was appropriate because "the critical fact supporting ... conviction" was that Davis had forced Woodman at gunpoint to go from the parking lot into the credit union. What happened inside the credit union had no bearing on this court's decision, and accordingly cannot be used to distinguish *Davis* from this case. Here, one of the defendants forced bank employee Simmons at gunpoint to go from the parking lot into the bank. In short, *Davis* controls and

---

**3.** Robinson also alleges that Carlson's representation at sentencing was deficient but fails to present any evidence of actual prejudice. There-

fore, his claim cannot succeed. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

the district court did not err in assessing a four-level sentencing enhancement for abduction.

Robinson and Taylor also object to the $50,000 restitution order the district court entered against each of them. They contend that because they stole only approximately $133,000 and because the police recovered more than $40,000, the total $100,000 restitution order is too high. What the defendants fail to recognize, however, is that the money recovered has not been returned to the bank, nor even proven to be part of the proceeds of the robbery. Once it is returned, they may seek an offset, if the government does not. Until then, they have no complaint.

### III. Conclusion

Robinson was given the opportunity to testify and he chose not to. He was well aware that the decision was his and he cannot now blame his attorney (who provided effective assistance) for his conviction. Nor can Robinson and Taylor succeed on their sentencing challenges. The evidence supported an abduction enhancement, as we ruled in *Davis*, and the order of restitution was proper. For these and the foregoing reasons, we AFFIRM.