IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                   Respondent,<br><br>         v.<br><br>MARK ALLEN FAGIN,<br><br>                   Appellant. | No. 84049-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — Appellant Mark Fagin challenged several of the conditions of community custody imposed at his original sentencing through a Personal Restraint Petition (PRP), which this court granted in part. At his resentencing, the parties agreed on, and the court adopted, revisions to each deficient condition except for one, which the court resolved in a manner neither party proposed. Fagin now challenges a variety of conditions of his new sentence on many different grounds, as well as asserting the trial court erred in denying his motion to substitute counsel and violated his right to privately confer with counsel. We remand for the trial court only to correct the unconstitutional, newly imposed condition.

I.     <u>BACKGROUND</u>

A.    <u>Factual Background</u>

In December 2017, Fagin responded to an online advertisement posted by

Citations and pincites are based on the Westlaw online version of the cited material.

law enforcement, in which a fictitious mother offered her two fictitious daughters for sexual activity (6 and 11 years old). Fagin discussed with the fictitious mother his plans for the fictional daughters, bought gifts for them, and drove to the meeting place, where he was arrested. His arrest led to the discovery of an incident from 2010, where Fagin lived with a woman and her 12-year-old daughter, who reported that Fagin raped her during that time. Fagin pled guilty to attempted rape of a child in the second degree for the sting operation (Count I) and rape of a child in the third degree for the incident in 2010 (Count II).

B.      Procedural Background

In 2018, the court imposed an indeterminate sentence of 90 months to life in prison for Count I, and 34 months of confinement on Count II. The court further imposed a lifetime term of community custody for Count I. The court imposed numerous conditions of community custody as a part of his sentence. Fagin did not appeal that sentence.

Fagin filed a PRP in 2019 challenging, among other things, many of the community custody conditions. In 2021, this court agreed that several of those conditions were unconstitutional (some of which the State had conceded were so), granted the petition, and remanded to the trial court to modify various conditions, which will be discussed in more detail below.

After some starts and stops, the trial court conducted a resentencing hearing on April 12, 2022, in which Fagin participated remotely while his counsel was in court in person. During the hearing, Fagin made a motion to substitute counsel, which the court denied for reasons to be described below. The court then

went forward with resentencing and entered the final second amended sentence on April 15, 2022. Fagin timely appeals.

## II. ANALYSIS

### A. Community Custody Conditions

#### 1. Additional procedural background

Fagin raised constitutional challenges in his PRP to the following pertinent[1] conditions: (1) the sexual history and other assessments condition (condition 3); (2) the internet access monitoring condition (condition 9); and (3) the social media condition (condition 11). This court remanded this matter to the trial court to correct these conditions.

Specifically, in an unpublished opinion, this court remanded condition 3 to ensure it complied with case law that prohibits plethysmograph testing at the direction of the DOC. This court remanded condition 9 to ensure the delegation of authority for approving the internet monitoring software is clear. This court did not consider other challenges to condition 9, noting "the parties may further litigate any issues they identify as to free speech or warrantless searches arising from this condition." Finally, this court agreed with Fagin's First Amendment challenge to condition 11 and remanded for the trial court to conduct the requisite overbreadth analysis on the record. The mandate was issued on December 16, 2021, directing the trial court to conduct "further proceedings in accordance with" this court's

---

[1] This court also ordered the parties to modify additional conditions 2 and 6 (related to the right to parent), crime related condition 3 (related to avoiding certain places), additional condition 5 (related to forming relationships), and additional condition 10 (regarding possessing sexually explicit material). However, these conditions are not here on appeal and will not be discussed further.

opinion.

At the start of the pertinent portion of the April 2022 resentencing, the court made clear it was "going to move forward . . . based on the mandate from Division I." Counsel for both parties then agreed that only one clause of one condition (condition 11) required discussion as the parties had agreed to the modifications to the other conditions off the record. The court adopted the agreed language as to conditions 3 and 9, heard argument about condition 11 (including inviting comment from Fagin himself), and made an oral ruling on that condition, deviating from either party's recommendation.

Specifically, the conditions were modified as follows (where strike-through text represents deletions and underlined text are additions):

> 3. Submit to a sexual history and periodic polygraphs ~~and/or plethysmograph assessments~~ at own expense as directed by <u>the</u> Department of Corrections or ~~therapist~~ <u>sexual deviancy treatment provider</u>.
>
> …
>
> 9. You shall not access the Internet on any device without ~~approved~~ monitoring software <u>that has been approved by your Community Corrections Officer</u>.
>
> …
>
> 11. ~~You shall not visit, have accounts for or utilize social media or websites which advertise or promote dating, prostitution, casual sexual relationships, or similar content.~~ <u>Your existing and future social media accounts are subject to review by your Community Corrections Officer. You shall, now and in the future, notify your Community Corrections Officer of any existing social media accounts and any of those created by you during your term of Community Custody. Your Community Corrections Officer, upon request, must be provided the ability to review any such account, and his discretion and in the manner of his choosing</u>.

Fagin now raises multiple types of challenges to each of these three

conditions. Specifically, Fagin challenges (a) conditions 9 and 11 as violative of article I, section 7 of our state constitution and of the Fourth Amendment of our federal constitution; (b) condition 9 as violative of RCW 9.94A.030(10)'s requirement that a condition be "crime-related" and as unduly vague under article I, section 3 of our state constitution and the Fourteenth Amendment of our federal constitution; and (c) condition 3 as violative of the Fifth Amendment of our federal constitution, as well as inconsistent with the court's own ruling regarding Fagin's financial status. Alternatively, Fagin argues his counsel was ineffective for failing to raise these challenges in violation of the Sixth Amendment of our federal constitution.

The State argues that each of these challenges is barred from review either by the law of the case doctrine codified at RAP 2.5(c) or, alternatively, because Fagin has not shown a manifest error of a constitutional magnitude (as they are raised for the first time on appeal) under RAP 2.5(a)(3).

In reply, Fagin responds that each of the conditions are properly before this court because the trial court "modified" condition 3, because this court did not reach the full merits as to condition 9, and because condition 11 was "overhauled." Alternatively, Fagin argues that this court can exercise its discretion under RAP 1.2(c), in the interest of justice and judicial economy.

Both parties are right in part and wrong in part.

2. <u>The scope of the trial court's and this court's review</u>

"No procedural principle is more familiar than that a constitutional right, or a right of any other sort, may be forfeited in criminal cases by the failure to make

timely assertion of the right before a tribunal having jurisdiction to determine it."
State v. Stoddard, 192 Wn. App. 222, 226, 366 P.3d 474 (2016). This principle was formalized in RAP 2.5(a), which states that this "court may refuse to review any claim of error which was not raised in the trial court." However, the rule goes on to provide exceptions and further guidance for these types of situations.

Specifically, pursuant to RAP 2.5(a)(3), "a party *may* raise . . . for the first time in the appellate court . . . [a] manifest error affecting a constitutional right." (Emphasis added.) And, pursuant to RAP 2.5(c)(1), "if the same case is again before the appellate court following a remand," and if "a trial court decision is otherwise properly before the appellate court," this court "*may* at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in an earlier review of the same case." (Emphasis added.)

As to the latter, three decades ago, our Supreme Court observed that "[c]learly the rule is permissive for both the trial court and the appellate court. It is discretionary for the trial court to decide whether to revisit an issue which was not the subject of appeal. If it does so, RAP 2.5(c)(1) states that the appellate court may review such issue." State v. Barberio, 121 Wn.2d 48, 51, 846 P.2d 519 (1993).

Moreover, the Court held that, "This rule does not revive automatically every issue or decision which was not raised in an earlier appeal. Only if the trial court, on remand, exercised its independent judgment, reviewed and ruled again on such issue does it become an appealable question." Id. at 50. Putting an even finer

point on it, the Court concluded, "The deciding fact then is whether the trial court in this case did in fact independently review, on remand" the issue seeking appellate review. Id. at 51 (distinguishing, on the one hand, between "exercis[ing] its independent judgment to review and reconsider its earlier sentence" and, on the other hand, "only [making] corrective changes").[2]

Finally, and for all these reasons, despite RAP 2.5(c)(1)'s permissive language, a "trial court's discretion to resentence on remand is limited by the scope of the appellate court's mandate." State v. Kilgore, 167 Wn.2d 28, 42, 216 P.3d 393 (2009).

Here, as in Kilgore, the mandate "did not explicitly authorize the trial court to resentence" Fagin, but instead remanded the matter to the trial court "for correction of the various deficiencies" we identified. Moreover, here, the trial court explicitly, carefully, and without objection indicated its intent to adhere to the specific mandate of this court. Both courts were well within their discretion to do so.

Further, as to conditions 3 and 9, the court accepted the off-the-record agreement of the parties and surgically corrected those conditions. In no sense

---

[2] Our Supreme Court explained that this distinction is so because "when, on remand, a trial court has the choice to review and resentence a defendant under a new judgment and sentence or to simply correct and amend the original judgment and sentence, that choice itself is not an exercise of independent judgment by the trial court. The reason that choice is not an independent judgment is because if the trial court simply corrects the original judgment and sentence, it is the original judgment and sentence entered by the original trial court that controls the defendant's conviction and term of incarceration." Kilgore, 167 Wn.2d at 40-41. Here the court entered a (second) amended judgment and sentence not a new judgment and sentence.

then did the court exercise its "independent judgment" or "reconsider" either of those conditions. Barberio, 121 Wn.2d at 50. On their face, the trial court was making only "corrective changes" to those conditions. Id. at 51.[3]

Condition 11 is different. The trial court accepted the invitation by, and agreed with, Fagin's counsel to consider the First Amendment implications in the proposal by the State. The court heard argument, re-reviewed the record, considered new case law, and made its own determination as to the overbreadth concerns of that condition, ultimately drafting language "different" than that proposed by either party. The court did not only correct a condition, but explicitly proposed its own new condition. In all these ways, the trial court exercised its independent judgment. Barberio, 121 Wn.2d at 51. Thus, condition 11 is properly before this court.

3. Standard of review of condition 11

"When sentencing an individual to a term of community custody, trial courts are tasked with crafting supervision conditions that are sufficient to promote public safety but also respectful of a convicted person's statutory and constitutional rights." State v. Johnson, 4 Wn. App. 2d 352, 355, 421 P.3d 969 (2018).

We generally review community custody conditions for abuse of discretion. State v. Nguyen, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). But we more carefully review conditions that interfere with a fundamental constitutional right. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). Such conditions

_____

[3] This conclusion does not address whether counsel for Fagin *should* have raised additional challenges contemplated by this court as to condition 9. This consideration will be addressed below.

must be "'sensitively imposed'" so that they are "'reasonably necessary to accomplish the essential needs of the State and public order.'" Id. (quoting State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)). The extent to which a sentencing condition affects a constitutional right is a legal question subject to strict scrutiny. Id.

In short, a "trial court necessarily abuses its discretion if it imposes an unconstitutional community custody condition, and we review constitutional questions de novo." State v. Wallmuller, 194 Wn.2d 234, 238, 449 P.3d 619 (2019). When a condition of community custody is primarily legal and does not require further factual development, it is ripe for review. State v. Cates, 183 Wn.2d 531, 534, 354 P.3d 832 (2015).

4. Condition 11 as written violates article I, section 7

a. Applicable substantive law

Our state constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST. art. I, § 7. It is well established that in some areas, this provision provides greater protection than the Fourth Amendment, its federal counterpart. State v. Olsen, 189 Wn.2d 118, 121, 399 P.3d 1141 (2017). The constitutional standard also is incorporated into the Sentencing Reform Act which states, "If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property." RCW 9.94A.631(1). In other words, the reasonable cause standard

requires a community corrections (CCO) officer to have a "well-founded suspicion that a violation has occurred" before conducting a warrantless search. State v. Parris, 163 Wn. App. 110, 119, 259 P.3d 331 (2011), abrogated on other grounds by State v. Cornwell, 190 Wn.2d 296, 412 P.3d 1265 (2018). In short, a warrantless search generally requires reasonable cause.

It is also well established, however, that probationers have a reduced expectation of privacy than ordinary citizens because they are "persons whom a court has sentenced to confinement but who are serving their time outside the prison walls." Olsen, 189 Wn.2d at 124-25. Under certain circumstances, the State does not need a warrant, an applicable warrant exception, or even probable cause to search a probationer. Id. at 126. However, the State's action on privacy intrusion must be undertaken with "authority of law." Id. While RCW 9.94A.631 generally provides the authority of law to search those in community custody, the judgment and sentence itself may provide the requisite authority of law. Id. A balancing test – whether a compelling interest, achieved through narrowly tailored means, supports the intrusion into a probationer's reduced privacy interests – is appropriate to evaluate if there is "authority of law" in the circumstances. Id. at 127-28.

b. Discussion

Fagin challenges the following portion of condition 11: "Your Community Corrections Officer, upon request, must be provided the ability to review any such account, [at] his discretion and in the manner of his choosing." He argues that it violates article I, section 7 of our state constitution and the Fourth Amendment of

our federal constitution because it authorizes warrantless searches without reasonable cause to believe Fagin has violated a condition of his sentence.

Indeed, on its face, that clause of that condition grants the CCO unrestricted discretion to search Fagin's present and future social media accounts without reasonable cause.

The State argues that this condition is similar to Olsen where the Court concluded that the requirement for random urinalysis (UA) testing for controlled substances, without reasonable suspicion, of probationers convicted for driving under the influence did not violate the state constitution. Olsen, 189 Wn.2d at 120-21.

In Olsen, our Supreme Court distinguished between UA testing and other more intrusive searches that run the risk of exposing a large amount of private information completely unrelated to the underlying offense. 189 Wn.2d at 124 ("including whether he or she is epileptic, pregnant, or diabetic") (quoting Skinner v. Railway Lab. Executives' Ass'n, 489 U.S. 602, 617, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989)).

Here, the social media condition 11 runs headlong into that risk. There literally is no limit as to the type of social media account and the information posted on it which the CCO may have warrantless access to, all of which may have nothing to do with the underlying safety concerns of the State. "These privacy interests are precisely what article I, section 7 is meant to protect." Id. (citing State v. Jorden, 160 Wn.2d 121, 126, 156 P.3d 893 (2007) ("[A] central consideration [under article I, section 7] is . . . whether the information obtained via the

governmental trespass reveals intimate or discrete details of a person's life.")).

Therefore, we conclude condition 11, unless limited by reasonable suspicion of a violation of the conditions relevant to the underlying sentence, violates article I, section 7 of our state's constitution, and we need not reach the Fourth Amendment claim. And thus, we remand this matter to the trial court to correct this and only this condition by imposing a reasonable cause standard before a CCO may conduct a warrantless search of Fagin's social media, which search should be conducted at a reasonable time and in a reasonable manner.

5. <u>Fagin's counsel was not ineffective for failing to challenge the modified condition 9</u>

Again, at resentencing, the trial court, with the parties' consent, corrected the condition 9 as follows: "You shall not access the Internet on any device without monitoring software that has been approved by your Community Corrections Officer." While we remanded this condition "to ensure that the delegation of authority for approving the monitoring software is clear," this court also explicitly permitted the parties to "further litigate any issues they identify as to free speech or warrantless searches arising from this condition." Below, Fagin's counsel raised neither.

Now Fagin raises article I, section 7 and Fourth Amendment challenges, i.e., warrantless search challenges, to this condition.[4] The trial court did not

---

[4] Fagin also avers that condition 9 violates RCW 9.94A.030(10)'s requirement that a condition be "crime-related" and is unduly vague under article 1, section 3 of our state constitution and the Fourteenth Amendment of our federal constitution. For the reasons discussed above, neither was contemplated by the mandate, the trial court did not exercise independent judgment over these issues, and will not be considered here.

12

exercise independent judgment over these issues and, for the reasons discussed above, will not be considered here in the first instance on its merits. However, Fagin brings an alternative claim of ineffective assistance of counsel for failing to object specifically to this condition.

Indeed, every person accused of a crime is guaranteed the constitutional right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. That right is violated where (1) counsel's performance was deficient, and (2) the deficiency prejudiced the defendant. Id. at 687.

Fagin's counsel's performance was not deficient because there was no "unconstitutional search problem" created by the simple correction to condition 9, which merely specified to whom was delegated the authority to approve the monitoring software.

As this court anticipated in its prior opinion, our courts have accepted filter/monitoring software as an effective tool narrowly tailored to monitor sex offenders' compliance. State v. Johnson, 197 Wn.2d 740, 744, 487 P.3d 893 (2021) (considering first and Fourteenth Amendment challenges); State v. Frederick, 20 Wn. App. 2d 890, 903-04, 506 P.3d 690 (2022) (considering the same with respect to markedly similar facts as here).

Moreover, the scope of such monitoring here is "implicitly" limited to Fagin's compliance with his other conditions of community placement and not "as a fishing expedition to discover evidence of other crimes, past or present." State v. Combs,

13

102 Wn. App. 949, 952-53, 10 P.3d 1101 (2000).

Furthermore, the CCO's role in this condition is limited to approving which monitoring software to use. Any further intrusion, e.g., to Fagin's social media accounts, will be governed by reasonable suspicion as specified above.

Therefore, the internet access condition passes the balancing test that a compelling interest, achieved through narrowly tailored means, supports the intrusion into a probationer's reduced privacy interests without the need to secure repeated or individual instances of reasonable suspicion when using the software. Olsen, 189 Wn.2d at 127-28.

Fagin's counsel below was not deficient in not challenging this revised condition on the limited remand.

B. Motion to substitute counsel

Fagin argues the trial court abused its discretion in denying Fagin's request for new counsel because it failed to conduct an adequate inquiry into the nature and extent of the conflict and breakdown in the attorney-client relationship. We disagree.

1. Additional factual background

At the resentencing hearing on April 12, 2022, Fagin requested to substitute his counsel, stating that he had "lost . . . trust" in his counsel and that his counsel's caseload was too heavy, such that he could not give this matter the attention deserved. Fagin further stated that he wanted "all issues" brought into conformity with the law, specifically requesting a First Amendment expert, which his counsel

was not.

After the court asked for his input, Fagin's defense counsel stated that, a few weeks after the initial hearing in February, he had sent Fagin a three-page letter, along with a hundred pages of caselaw, addressing Fagin's concerns and explaining why he would not be addressing Fagin's concerns in court. Counsel said he devoted the time to Fagin's case he believed was required and necessary. After checking with the State, the trial court denied the request to remove and substitute counsel, advising Fagan that "although there is a right to appointed counsel in a case like this, it's not to counsel of one's choosing" and there were no facts supporting removal.

2. Law

Defendants in criminal cases have the right to the assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. The right to counsel attaches whenever a court considers any matter in connection with a defendant's sentence. State v. Rupe, 108 Wn.2d 734, 741, 743 P.2d 210 (1987).

Although indigent defendants do not have an absolute right to counsel of choice, the substitution of counsel is required where there is good cause shown. In re Pers. Restraint of Stenson, 142 Wn.2d 710, 723, 16 P.3d 1 (2001). Good cause includes (1) a conflict of interest (which is not alleged here), (2) an irreconcilable conflict, or (3) a complete breakdown in communication between the attorney and the defendant. Id.

A trial court's decision denying a motion for substitute counsel is "a matter within the discretion of the trial court." State v. Stenson, 132 Wn.2d 668, 733, 940

15

P.2d 1239 (1997). "There is an abuse of discretion when the trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons." State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997). "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting State v. Rundquist, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)).

Constitutional considerations, however, provide a check on the exercise of this discretion. United States v. Nguyen, 262 F.3d 998, 1003 (9th Cir. 2001). Specifically, the denial of a motion to substitute counsel may implicate the defendant's Sixth Amendment right to counsel. Bland v. Cal. Dep't of Corr., 20 F.3d 1469, 1475 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000).

Three factors are considered in reviewing a trial court's decision to deny a motion to substitute counsel: (a) the extent of the conflict; (b) the adequacy of the court's inquiry; and (c) the timeliness of the motion. In re Pers. Restraint of Stenson, 142 Wn.2d at 724.

As to the first factor, "[c]ounsel and defendant must be at such odds as to prevent presentation of an adequate defense." State v. Schaller, 143 Wn. App. 258, 268, 177 P.3d 1139 (2007). As to the second, when a court learns of an alleged conflict between a defendant and counsel, it must inquire into the factual basis for the defendant's dissatisfaction, so that the judge has a "sufficient basis for reaching an informed decision." State v. Thompson, 169 Wn. App. 436, 461,

290 P.3d 996 (2012) (quoting United States v. Adelzo–Gonzalez, 268 F.3d 772, 777 (9th Cir.2001)).

3. Discussion

Beginning with the second factor, regarding the nature of the inquiry the court conducted, the heart of the dispute was clear: Fagin wanted more timely responses from his counsel and wanted him to raise every error he saw before the court. Fagin explained clearly these straightforward complaints about his counsel and there was "sufficient" basis for the court to make its decision. Thompson, 169 Wn. App. at 462. Stated otherwise, "allowing the defendant and counsel to express their concerns fully" obviates the need for any further "formal inquiry" where the defendant "states his reasons for dissatisfaction on the record." Schaller, 143 Wn. App. at 271. That standard was met here. We will not impose, as Fagin seems to suggest, a requirement for the court to ask a certain type of question (e.g., specific or targeted) or conduct a specific kind of inquiry (e.g., in camera) in every case.

As to the first factor (the extent of the conflict between defendant and counsel), In re Pers. Restraint of Stenson, 142 Wn.2d at 723-24, the trial court did not abuse its discretion in finding no facts supporting substitution, because the conflict related to a "mere 'disagreement about trial strategy [that] does not require substitution of counsel.'" United States v. Lott, 310 F.3d 1231, 1249-50 (10th Cir. 2002) (alteration in original) (quoting United States v. Taylor, 128 F.3d 1105, 1110 (7th Cir. 1997)).

It was clear that Fagin, while harboring doubts based on his counsel's

17

caseload or his perceived expertise, simply wanted his counsel to approach the case differently, i.e., to raise "all issues" he thought appropriate. A conflict over strategy does not constitute a conflict of interest. State v. Cross, 156 Wn.2d 580, 607, 132 P.3d 80 (2006), abrogated on other grounds by State v. Gregory, 192 Wn.2d 1, 427 P.2d 621 (2018).

We need not reach whether Fagan's motion was timely. Thus, we find the trial court did not abuse its discretion in denying Fagin's motion for new counsel.

C. Right to privately confer with counsel

Finally, Fagin argues he did not know how private attorney-client communication could take place during the remote hearing, in violation of the Sixth Amendment constitutional right to the assistance of counsel. By way of example, he argues, if he could have privately conferred with his counsel about several of the conditions of community custody, his counsel may have raised these arguments. On this claim, Fagin is wrong on the facts and the law.

1. Additional factual background

For the first scheduled resentencing hearing on February 8, 2022, Fagin was present via Zoom and his counsel was in the courtroom. During the hearing, Fagin's counsel asked for a 60 to 90-day continuance, which the trial court granted for 60 days. Fagin asked if he could enter into a video breakout session with his counsel. The trial court said it would leave the bench, adjourning and going off the record, but it could leave the Zoom link active, so that Fagin and his counsel could use it to talk privately with each other. That was what the trial court did.

In the final resentencing hearing on April 12, 2022, Fagin was present via

phone as the prison had some difficulties with their computer, while his counsel was in the courtroom. The trial court told Fagin that, if he had trouble hearing them, he could interrupt and let the judge know.

After the trial court ruled on Fagin's motion to substitute counsel, Fagin asked, "Your Honor, can I speak?", to which the trial court said no and told Fagin that he was going to move forward on the resentencing as mandated by this court. Fagin interrupted again and said, "Your Honor, I object to this." The trial court said, "Mr. Fagin, one moment." and then went on with the proposed order.

After counsel from both sides made their arguments on the social media condition (condition 11) of the proposed order, the trial court told Fagin that he would like to give Fagin the opportunity to address the issue of "resentencing . . . and the amendment of certain conditions of your community corrections." Fagin said, "I have to say that I object to the entire hearing . . . I need to be able to participate and to have things explained to me by my lawyer when I have questions." Fagin did not, however, state he had questions or at any time ask to speak to his counsel, but went on to criticize his counsel's qualifications. Finally, Fagin said, "I respectfully object to all of this." The trial court acknowledged his objection and made the ruling on the sentencing amendment.

2. Law

Criminal defendants have a state and federal constitutional right to the assistance of counsel at all critical stages of criminal proceedings. Montejo v. Louisiana, 556 U.S. 778, 786, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009); State v. Heddrick, 166 Wn.2d 898, 909, 215 P.3d 201 (2009); U.S. CONST. amend. VI;

19

WASH. CONST. art. 1, § 22. Sentencing is a critical stage of the proceedings. Rupe, 108 Wn.2d at 741.

The constitutional right to counsel requires the "opportunity for private and continual discussions between defendant and his attorney." State v. Hartzog, 96 Wn.2d 383, 402, 635 P.2d 694 (1981). "The ability for attorneys and clients to consult privately need not be seamless, but it must be meaningful." State v. Anderson, 19 Wn. App. 2d 556, 562, 497 P.3d 880 (2021).

In Anderson, this court was critical of a trial court's handling of a zoom hearing because it did not set "ground rules" for the defendant's remote participation and because it could not be expected that the defendant would know to speak up. Id. at 563. However, this court held that the errors were harmless because Anderson received "all the forms of relief that were requested at his resentencing hearing," and that any communication between his counsel and himself would not have made a difference. Id. at 564. Specifically, this court was not convinced that, if the defendant and the counsel had confidentially conferred during the meeting to expand the scope of the hearing beyond the issues identified on remand, it would be different because the defendant and his attorney were able to confer before the hearing. Id.[5]

3. Discussion

Unlike the defendant in Anderson, this court did set ground rules for private conversations in words and practice at least once, by offering to step out of the

---

[5] Anderson further held the denial of this right to be a manifest constitutional error, reviewable for the first time on appeal under RAP 2.5(a)(3), which the State does not challenge here. Anderson, 19 Wn. App. 2d at 562.

courtroom, to adjourn the hearing, and to permit them to speak privately. Further, unlike the defendant in Anderson, the trial court specifically told Fagin that, if he had any questions, he could speak up. Rather than ask for time with his counsel, Fagin chose not to participate and simply claimed that he objected to "everything." Thus, both the process to privately confer with his counsel, and the court's expectations that he would avail himself of that process, were reasonable and realistic, respectively.

Moreover, even if the process the court established was in error, as in Anderson, it appears that private attorney-client consultation in the remand meeting would not have made a difference. At the first hearing, the court granted Fagin's counsel's request for additional time for the express purpose to confer with his client, and (though not as timely as or in the manner Fagin would have wanted) Fagin's counsel in fact did confer with Fagin through written communication about why he would not address Fagin's concerns in court. It is unclear what, if any, further communications would have occurred beyond what occurred during the 60-day continuance.[6]

Additionally, the trial court was very clear that it would not entertain any further discussions about his motion to substitute counsel and was going to hold closely to the issues identified in the appellate court mandate, to the extent they

---

[6] In reply, Fagin argues, "That there was written communication before the sentencing hearing is of no moment." Fagin cites no authority for the proposition we should ignore this further context. Where a party fails to provide citation to support a legal argument, we assume counsel, like the court, has found none. State v. Loos, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020) (citing State v. Arredondo, 188 Wn.2d 244, 262, 394 P.3d 348 (2017)).

were not already agreed to by the parties. Thus, as in <u>Anderson</u>, "[e]ven if Mr. [Fagin] had asked his attorney to try to expand the scope of the hearing, there is no reasonable basis for believing the result could have been different." <u>Anderson</u>, 19 Wn. App. 2d at 564.

Therefore, applying the harmless error analysis to Fagin's challenge, we conclude the court did not violate Fagin's right to privately confer with his counsel.

III.    <u>CONCLUSION</u>

We affirm condition 3 and condition 9, and we find no error in the trial court's decisions on the motion to substitute counsel and its method of ensuring private communications between Fagan and his counsel. We remand this matter only for the court to correct condition 11 by adding a reasonable cause standard consistent with this opinion.

Díaz, J.

WE CONCUR: